Filed 2/18/16  Jansing v. State of Calif. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NICHOLAS JANSING,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STATE OF CALIFORNIA et al.,<br><br>    Defendants and Respondents. | D067278<br><br><br><br>(Super. Ct. No. 37-2014-0003190-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

John Silas Hopkins III and Mary E. Jansing for Plaintiff and Appellant.

Jeanne E. Scherer, Jeffrey R. Benowitz, Glenn B. Mueller, John Frederick Smith and Mathieu G. Blackston for Defendants and Respondents.

The California Department of Transportation (Caltrans) and Caltrans's employees Jean Mallare, Kathleen Jones, and Diana Tham (Mallare, Jones, and Tham collectively Individual Defendants; Caltrans and Individual Defendants collectively Respondents)

successfully demurred to the first amended complaint of Nicholas Jansing doing business as Century Sun and Solar (Jansing). Jansing appeals the ensuing judgment, contending that the superior court erred in finding that he failed to state valid causes of action. We conclude Jansing's contentions lack merit and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The instant dispute arises out of a series of invitations to bid (IFB) published by Caltrans. Jansing submitted bids in response to some of the IFB's, and Caltrans awarded him a contract as to one successful bid. Because we are reviewing a judgment of dismissal following an order sustaining a demurrer, we assume the facts alleged in the first amended complaint are true if they are not contrary to law or to a fact of which we may take judicial notice. (See *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 238.)

The Jansing/Caltrans Contract

On November 3, 2011, Caltrans executed a contract with Jansing for Jansing to provide, among other things, legal photocopying and process server services for "Caltrans Legal Office located" in San Diego (Contract 8459). Contract 8459 required Jansing to perform services only in response to a task order from a Caltrans task manager. The contract stated "[a]ll Task Orders must be signed by the Caltrans Task Manager(s) before services are rendered." Contract 8459 also required that each invoice for services rendered had to include, among other things, the date of service, the location of service, the task order number, the description of the task order, as well as the name of the case for which services were provided.

2

Contract 8459 also included a termination for convenience clause whereby "Caltrans reserve[d] the right to terminate this Agreement without cause upon thirty (30) days written notice to [Jansing] or immediately in the event of material breach by [Jansing]."

Jansing alleges that on October 11, 2011, Caltrans's employee Mallare informed him "that he would have to be ready to start work on Contract 8459 on November 7, 2011, and that he would have to have an office in San Diego to service that contract." Jansing resided in Sacramento at the time of placing the bid for Contract 8459, and he does not allege that he had any business or business office in San Diego at that time. Jansing asserts that he signed a two-year lease in San Diego for the purpose of completing Contract 8459. Jansing alleges that Mallare then sent a letter to him on December 12, 2011, which stated that Jansing was not authorized to start work until instructed by the contract manager. Jansing further states that he was told that the contract manager was not authorized to approve payment for any work or services performed prior to contract approval.

Three days later on December 15, 2011, during a telephone conversation, Caltrans's employee Jones told Jansing that his company was "not the right company" to service Contract 8459 and she abruptly ended the conversation. In an e-mail dated January 6, 2012, Mallare put a hold on the services for Contract 8459. Jansing alleges that on January 9, 2012, he told Caltrans that he was still ready and willing to perform under Contract 8459.

3

Caltrans's employee Kelly Takigawa notified Jansing in a letter dated January 31, 2012, that Contract 8459 was terminated effective March 1, 2012, as Caltrans was exercising its right to execute the termination for convenience contract provision. Jansing alleges that Contract 8459 did not include provisions for settlement of the costs for a termination for convenience and did not consider responsibility to reimburse him for costs incurred for preparation.

The Various IFB's

On September 23, 2011, Caltrans published IFB 66 soliciting bids to perform " 'Custom Color Photo Printing' " for Caltrans's Sacramento office. Caltrans did not receive any bids on IFB 66.

On January 22, 2012, Caltrans published IFB 67 again soliciting bids to perform "Custom Color Photo Printing" for Caltrans's Sacramento office. Jansing submitted a bid for $76,482.40. The next lowest bid was $163,212.50. Caltrans awarded the contract on IFB 67 to Jansing. Jansing executed Contract 67, but Jansing never received a copy of Contract 67 executed by Caltrans. Caltrans subsequently canceled Contract 67.

On April 20, 2011, Caltrans published IFB 8133 soliciting bids to perform " 'Legal Photocopying Services' " for Caltrans's Los Angeles office. Jansing did not submit a bid on IFB 8133. Ultimately, Caltrans canceled IFB 8133. Although not involved in the subject bid, Jansing asserts "IFB 8133 was terminated illegally on a whim and for no reason or IFB 8133 was terminated illegally on the basis of a contrived reason that was intentionally false and deceptive."

4

On May 1, 2012, Caltrans published IFB 8787 soliciting bids to perform " 'Messenger Services' " for Caltrans's Los Angeles office. Jansing ultimately bid on IFB 8787 and proved to be the low bid of $755,812.50. Ace Messenger and Attorney Services, Inc. (Ace Messenger) offered the next lowest bid of $848,871. Jansing inquired multiple times as to the status of IFB 8787. Eventually, Caltrans sent a letter to Jansing explaining that IFB 8787 had been canceled "in the best interests of the State, because it lacked necessary details and requirements within the scope of work and solicitation instructions. The IFB will be revised and reissued at a later date." Jansing claims he never received a satisfactory answer regarding Caltrans's decision to cancel IFB 8787, and asserts that the reasons provided by Caltrans and Caltrans's employees Keith Duncan and Mallare "were intentionally false and deceptive."

On October 4, 2012, Caltrans published IFB 8943 soliciting bids to perform " 'Messenger Services for Los Angeles, Ventura, San Bernardino, Riverside and Orange Counties' " for Caltrans's Los Angeles office. IFB 8943 included three additions to the scope of work compared to IFB 8787, requiring anyone bidding to: (1) have "an appropriate office located in Los Angeles downtown/Civic Center area"[;] (2) ensure its employees are not convicted felons and "be able to give and relay clear instructions from court personnel to secretary/attorney or from secretary/attorney to court personnel"[;] and (3) be registered with the "County Recorder's Office for Process Server pursuant to Business and Professions[] Code[] Section[s] 22350-22360." (Italics and boldface omitted.)

5

Jansing was the low bidder of $783,932.50, and Ace Messenger had the next lowest bid of $844,121.

Jansing communicated via e-mail with Mallare about the status of IFB 8943. After multiple communications over about two weeks, Mallare sent Jansing a cancellation notice stating that IFB 8943 was canceled due to an " ' "internal error" ' " in the solicitation and a new IFB would be issued.

On March 7, 2013, Caltrans published IFB 9215 soliciting bids to perform " 'Attorney Messenger and Court Filing Services for Los Angeles, Ventura, San Bernardino, Riverside and Orange Counties' " for Caltrans's Los Angeles office. IFB 9215 included new minimum requirements, compared to IFB 8943, for all bidders, such as an indication that " 'time is of the essence' " in performing the work; the bidder had to be able to meet the requested services deadline from an office open to the public and located in the downtown Los Angeles/Civic Center area; the bidder must have a "fully functioning office with at least 12 employees permanently registered with the County Recorder's Office for Process Server pursuant to Business and Professions[] Code Sections 22350-22360"[;] and the bidder "must be registered with the appropriate agencies to be able to conduct business in the State of California, licensed to operate in Los Angeles County and authorized to provide document preparation and service of process services in all Southern California counties[.]"

6

Jansing did not submit a bid for IFB 9215 because he did not have an office open to the public and he did not have 12 " 'permanently registered' " process servers.[1] Legal Support Network provided the low bid of $380,111 with the next lowest bid being $777,092.50. Caltrans subsequently canceled IFB 9215. Jansing contends IFB 9215 was "terminated illegally on the basis of a contrived reason that was intentionally false and deceptive."

On March 29, 2013, Caltrans published IFB 9158 soliciting bids to perform " 'Attorney/Messenger Services' " for Caltrans's Los Angeles office. The work proposed in IFB 9158 was similar to the work proposed in IFB 9215 and the minimum requirements were the same except that a bidder had to provide copies of all registered employees as well as licenses and permits at the time of bid submission. Jansing did not submit a bid on IFB 9158. Ace Messenger was the low bidder.[2]

Jansing's Government Claims

On March 20, 2012, Jansing filed a government claim with the California Victim Compensation and Government Claims Board (Board). In that claim, Jansing described his injury as follows: "Caltrans issued an executed contract [8459] causing us to expend

---

[1] Jansing contends that the requirement that 12 employees be "permanently registered with the County Recorder's Office" was impossible to satisfy. He points out that a process server registration is only valid for two years. The allegations of the operative complaint do not explain if he at least had 12 employees registered with the County Recorder's Office for the two-year term. In addition, we observe this requirement did not prevent Caltrans from receiving multiple bids from other bidders.

[2] The operative complaint also mentions IFB 9560 for work to be performed in the Sacramento area. Jansing did not submit a bid because he could not satisfy the minimum requirements.

7

costs to prepare to service Catrans [*sic*] in the San Diego area. Caltrans delayed us for more than 3 months and then abruptly canceled the contract with no explanation. We have incurred and continue to incur costs due to this preparation." Jansing further explained: "After bidding this work 5 times, and awarding the project, we received a fully executed contract . . . which required us to open a new office in the San Diego area to support Caltrans. Caltrans then canceled the contract for no reason. We beleive [*sic*] this was a wrongful termination." Jansing claimed damages of $593,576.80. The Board rejected Jansing's claim at a hearing on August 15, 2013.

On September 16, 2013, Jansing submitted a second government claim to the Board. In that claim, Jansing contended that Caltrans improperly canceled IFB 8943 and ultimately awarded IFB 9158 to Ace Messenger. Jansing asserted that IFB 8943 and IFB 9158 covered the same scope of work. Jansing argued that "parties within Caltrans" manipulated requirements to "direct a bid award to a preferred contractor." Jansing claimed damages of $783,932.50. The Board rejected this claim at a hearing on October 17, 2013.

The Lawsuit

On February 13, 2014, Jansing, proceeding in propria persona, filed a form complaint against Respondents, among others, seeking over $5 million in damages based on claims of intentional tort, fraud, breach of contract, and common counts. Respondents successfully demurred to the original complaint, but the superior court allowed Jansing leave to amend.

8

Jansing, represented by counsel, filed a first amended complaint on July 22, 2014.[3]  This complaint contained causes of action for breach of contract, bad faith termination of contract, intentional interference with contract, to set aside a contract between Ace Messenger and Caltrans under Public Contract Code section 10421, violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.), two counts based on violations of the Sherman Antitrust Act (15 U.S.C § 1 et seq.), violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.), failure to supervise employees in violation of Government Code section 815.6,[4] an accounting, and attorney fees under Code of Civil Procedure section 1021.5.

Respondents successfully demurred to the first amended complaint, and the court did not grant leave to amend.  Jansing timely appealed the ensuing judgment.

DISCUSSION

Jansing contends the superior erred in sustaining Respondents' demurrer without leave to amend.  However, he does not contend that he could plead additional facts to state valid causes of action nor does he ask us to remand this matter to the superior court

---

[3]     Jansing also named additional Caltrans employees as well as Ace Messenger as defendants.  Nevertheless, Jansing did not serve these additional defendants, and they are not part of this appeal.

[4]     Statutory references are to the Government Code unless otherwise specified.

9

to allow him to amend his complaint. Instead, he insists that the operative complaint stated 11 valid causes of action.[5] We disagree.

I

STANDARD OF REVIEW

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*City of Dinuba*).) "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true . . . ." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

---

5       There is a reference in the record that Jansing filed, but did not calendar, a motion for leave to amend. The superior court interpreted Jansing's request in that motion to be seeking leave to amend only if the court construed the court's previous leave to amend in a narrow manner. The court pointed out that the problem with the first amended complaint was not the court's previous grant of leave to amend, but the fact that the claims in the first amended complaint were not asserted in the government claims. The court further noted that Jansing had not provided a basis for leave to amend the first amended complaint. However, the court considered whether leave to amend should be granted in connection with the demurrer ruling. Jansing does not address his motion for leave to amend whatsoever.

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse."  (*City of Dinuba*, *supra*, 41 Cal.4th at p. 865.)  In reviewing the sustaining of a demurrer, we review the trial court's result for error, and not its legal reasoning.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

II

*FIRST CAUSE OF ACTION:  BREACH OF CONTRACT*

The first amended complaint's first cause of action is for breach of contract.  The essential elements of a breach of contract claim are:  "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.)  Jansing sues Caltrans based on Contract 8459.  However, as the superior court noted, Jansing does not indicate what term of the contract Caltrans breached.  Our independent review of the operative complaint did not uncover any allegations of a breach either.

Caltrans emphasizes that Jansing admits that he did not perform any work under Contract 8459 and was instructed by Mallare that he was not "authorized to commence work until [he was instructed] by the Contract Manager."  Jansing does not point to any allegations in the complaint where he alleges Caltrans breached Contract 8459.  Instead, he argues that he is entitled to recover the costs of performing the contract before Caltrans terminated it for convenience.  We are not persuaded.

11

Contract 8459 clearly states that Jansing was not to begin any work until he received a task order from the project's task manager. There is no dispute that Jansing never received any such task order. The contract also states that all costs associated with the project, including travel, employee pay, and subsistence, were to be included in the price associated with the bid. Because Jansing did not perform any portion of the contract, including any legal photocopying, legal scanning and/or imaging, subpoena and process/manager services, it logically follows that he would not be entitled to be paid what he would have been entitled to under an invoice for that work. In short, under the terms of the contract, without the completion of a task order, Jansing would not be entitled to payment for traveling, employee pay, or other related expenses.

Further, Caltrans terminated its contract with Jansing in compliance with the contract terms. The contract provided: "Caltrans reserves the right to terminate this Agreement without cause upon thirty (30) days written notice to the Contractor or immediately in the event of material breach by [Jansing]." Caltrans provided Jansing with the required 30 days written notice of termination in a letter dated January 31, 2012, which stated that the contract would be terminated effective March 1, 2012. This gave Jansing sufficient notice of Caltrans's intention to terminate Contract 8459 for convenience in accordance with the contract's provisions. In the first cause of action, Jansing does not argue Caltrans was not entitled to terminate the contract for convenience or he did not receive proper notice of such termination. Nevertheless, he argues he is entitled to recover all costs associated with his performance under the contract.

12

To this end, Jansing relies on several federal cases[6] that he claims support his position that Caltrans must reimburse him for his "out-of-pocket costs of uncompleted performance." Jansing's reliance on these cases is misplaced.

Contract 8459 contained a governing law provision that provided that it was governed by California law. None of the federal cases Jansing cites involve applying California law to a termination of a contract for convenience. In two of the cases, the plaintiffs were instructed to perform and had performed work under the subject contracts. (See *General Dynamics*, *supra*, 131 S.Ct at p. 1908; *Krygoski*, *supra*, 94 F.3d at pp. 1539-1540.) It is undisputed that Jansing received no analogous instructions here. *RAM Engineering* concerned indispensable parties and the court analyzed a termination for convenience under the Kentucky Model Procurement Code. (*RAM Engineering*, *supra*, 127 S.W.3d at pp. 584-585.) Simply put, none of these cases prove helpful to Jansing's position.[7]

Here, there was no performance under the contract. As such, Jansing is seeking to recover his costs of preparing to perform. He has provided no authority that holds that he

---

6    *General Dynamics Corp. v. United States* (2011) 563 U.S. 478 [131 S.Ct 1900] (*General Dynamics*); *Krygoski Construction Co. v. United States* (Fed.Cir. 1996) 94 F.3d 1537 (*Krygoski*); *RAM Engineering & Construction v. University of Louisville* (Ky. 2003) 127 S.W.3d 579 (*RAM Engineering*).

7    Caltrans also argues that Jansing is not entitled to damages or restitution under the first cause of action pursuant to a quantum meruit theory. In his reply brief, Jansing states that Caltrans's argument "has no conceivable bearing on stating a claim under a termination for convenience clause." We interpret Jansing's position as conceding that he is not seeking damages or restitution under any quantum meruit theory for his first cause of action. As such, we do not address this issue further.

13

can recover costs of preparing to perform a contract, and we therefore deem waived any claim that the court erred in sustaining the demurrer without leave to amend based on Jansing's claim he is entitled to the costs of preparing to perform under the contract. (See *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 (*McComber*) [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention deemed waived because "Appellant did not formulate a coherent legal argument nor did [he] cite any supporting authority"]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["The dearth of true legal analysis in [his] appellate briefs amounts to a waiver of the [contention] and we treat it as such."].)

*SECOND CAUSE OF ACTION:  BAD FAITH TERMINATION OF CONTRACT*

In his second cause of action, Jansing seeks $7.5 million in damages for lost profits under Contract 8459, Contract 67,[8] and two bid solicitations that Caltrans canceled. Jansing bases his claim for damages on a cause of action entitled "bad faith termination."

The superior court sustained Caltrans's demurrer as to this cause of action on the grounds that California law does not recognize the tort of a bad faith breach of contract outside the insurance context in the absence of an independent duty arising from the principles of tort law. (See *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th

---

[8]     There are no allegations in the complaint that Caltrans executed Contract 67.

14

85, 102.) On appeal, Jansing claims the superior court erred because he was not alleging a tort in the second cause of action, but instead, a breach of contract cause of action based on the implied covenant of good faith and fair dealing. Even if we assume the second cause of action sounds in contract, we still conclude Jansing has failed to state a valid contract cause of action.

"[I]t is well established that a covenant of good faith and fair dealing is implicit in every contract. [Citations.] The essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other to receive the benefits of the contract." (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 43, fn. omitted.)

In *Carma Developers* (*Cal.*)*, Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342 (*Carma*), the court[9] discussed the purposes, scope, and limitations of the implied covenant of good faith and fair dealing. The court began its analysis by noting that "in situations where one party is invested with a discretionary power affecting the rights of another," the covenant of good faith and fair dealing requires that "[s]uch power . . . be exercised in good faith." (*Id.* at p. 372.)

After acknowledging the difficulty of defining precisely what the covenant requires, the court noted that the covenant has both a subjective and an objective component:

---

9    *Carma* was decided by a panel of seven justices of the Court of Appeal sitting as the Supreme Court, due to the recusal of all members of the Supreme Court. (*Carma*, *supra*, 2 Cal.4th at p. 350, fn. 1.)

15

"[I]t has been suggested the covenant has both a subjective and objective aspect—subjective good faith and objective fair dealing. A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable. [Citations.] In the case of a discretionary power, it has been suggested the covenant requires the party holding such power to exercise it 'for any purpose within the reasonable contemplation of the parties at the time of formation—to capture opportunities that were preserved upon entering the contract, interpreted objectively.' " (*Carma*, *supra*, 2 Cal.4th at p. 372.)

The court also explained that the duty of good faith and fair dealing is limited by the purposes for which it is implied:

"It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. [Citations.] As explained in *Foley*[*v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 668], under traditional contract principles, the implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' [Citation.]" (*Carma*, *supra*, 2 Cal.4th at p. 373.)

Thus, a party may breach the covenant by engaging in conduct, "[that,] though not prohibited [by the parties' contract], is nevertheless contrary to the contract's purposes and the parties' legitimate expectations." (*Carma*, *supra*, 2 Cal.4th at p. 373.)

Here, Contract 8459 contained a provision that plainly and unambiguously conferred upon Caltrans the unqualified right to terminate the contract "without cause upon thirty (30) days written notice[.]" This is what Caltrans did. Nevertheless, Jansing insists Caltrans exercised its right under the contract in "bad faith" because the letter terminating the contract did not give a reason for the termination, Jansing unsuccessfully tried to discover the reason for the termination, and there was no change in

16

circumstances. Jansing further argues that he had not been cleared to perform work under the contract to "test his capability" so apparently he is unsure why a Caltrans representative informed him that his company was " 'not the right company.' "

Jansing does not explain how any of these allegations support his conclusion that Caltrans acted in bad faith to terminate Contract 8459. The contract does not require Caltrans to provide the reason it terminated the contract. It merely calls for Caltrans to provide 30-day written notice of its election to terminate. Jansing concedes that he received adequate written notice. He simply disagrees with Caltrans terminating Contract 8459. This disagreement does not support his claim that Caltrans acted in bad faith.

Jansing also attempts to expand the implied covenant of good faith and fair dealing beyond an executed contract to apply to solicitations for bids, but he does not provide any authority to support this expansion. As such, we deem this argument waived. (See *McComber*, *supra*, 72 Cal.App.4th at p. 522.)

Further, even if Jansing had not waived this argument, we observe that his allegations fall short of alleging facts to show Caltrans acted in bad faith. He merely disagrees with Caltrans's decision to cancel the subject solicitations to bid and claims that the reasons Caltrans provided for cancelling them were insufficient. Again, Jansing's disagreement with Caltrans does not give rise to his claim that Caltrans acted in bad faith.

III

*CAUSES OF ACTION 3 THROUGH 9*

Jansing next argues that the superior court erred in sustaining the demurrer as to causes of action 3 through 9. Jansing contends the court wrongly concluded these causes

17

of action did not conform to the matters set forth in his two government claims. Respondents counter that the allegations in the first amended complaint vary significantly from the matters in the two government claims and, thus, the court properly sustained the demurrer. Respondents have the better argument.

Section 900 et seq., part of the Tort Claims Act, "prescribes the manner in which public entities may be sued." (*Chalmers v. County of Los Angeles* (1985) 175 Cal.App.3d 461, 464.) Section 945.4 provides that " 'no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . Section 910 . . . until a written claim therefor has been presented to the public entity and has been acted upon by the [public entity's] board, or has been deemed to have been rejected by the board . . . .' Section 910, in turn, requires that the claim state the 'date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted' and provide '[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.' " (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 445 (*Stockett*).)

"The purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' [Citation.] Consequently, a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' [Citations.] As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate

18

meritorious actions [citation], the claims statute 'should not be applied to snare the unwary where its purpose has been satisfied' [citation]." (*Stockett*, *supra*, 34 Cal.4th at p. 446.)

"A claim relating to a cause of action . . . for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. . . ." (§ 911.2, subd. (a).) "The board shall act on a claim . . . within 45 days after the claim has been presented. . . ." (§ 912.4, subd. (a).) "If the board fails or refuses to act on a claim within the time prescribed by this section, the claim shall be deemed to have been rejected by the board on the last day of the period within which the board was required to act upon the claim." (*Id.*, subd. (c).) If written notice of rejection of the claim is sent, the lawsuit against the public entity must be commenced "not later than six months after the date such notice is personally delivered or deposited in the mail." (§ 945.6, subd. (a)(1).)

"If the claim is rejected and the plaintiff ultimately files a complaint against the public entity, the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim. [Citation.] '[E]ven if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' " (*Stockett*, *supra*, 34 Cal.4th at p. 447.) "The claim, however, need not specify each particular act or omission later proven to have caused the injury. [Citation.] A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.' " (*Ibid*., citing *Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 278.) "Only where there has been a 'complete shift of allegations,

19

usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim' have courts generally found the complaint barred.  [Citation.]  Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint."  (*Stockett*, at p. 447.)  " ' "If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim.  In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint . . . ." ' "  (*Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 434 (*Fall River*).)

Here, Jansing submitted two government claims.  The first claim only concerned Caltrans's termination of Contract 8459.  In that claim, Jansing states that Caltrans delayed Jansing for three months and "abruptly canceled the contract with no explanation."  He claimed the termination was wrongful.  Jansing used six sentences in the claim to describe Caltrans's wrongful conduct and his injury.

In the second claim, Jansing identifies four IFB's issued by Caltrans (IFB 9215, IFB 8787, IFB 8943, and IFB 9158).  The letter entitled "Basis of Claim" attached to the second claim outlines a bidding process in which Jansing submitted a bid in response to Caltrans's IFB's.  The letter alleges that Caltrans canceled the IFB's on a number of occasions due to internal errors in the solicitation process and due to a change in the

20

bidding requirements. Ultimately, the letter alleges Caltrans awarded a contract to an alternative bidder.

Based on this foundation, Jansing asserted in the second claim that Caltrans directed a bid award to a specific contractor for one contract. Although Jansing insisted that Caltrans's employees committed wrongful acts, he did not name any Caltrans employees or describe their wrongful acts.

In comparison to the two government claims, the first amended complaint consists of 351 paragraphs over 82 pages that includes 11 causes of action. In addition, almost 80 additional pages of exhibits are attached to the first amended complaint. The complaint references and discusses over 10 IFB's as well as various contracts that Caltrans allegedly entered with other parties.

Jansing was required to provide Caltrans with notice sufficient for it to investigate and evaluate causes of action 3 through 9 as contained in his first amended complaint. " ' "If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim." ' " (*Fall River*, *supra*, 206 Cal.App.3d at p. 434.) " ' "In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint . . . ." ' " (*Ibid*.)

In *Fall River*, the appellate court issued a writ of mandate directing the trial court to grant the defendant's motion for judgment on the pleadings (*Fall River, supra*, 206 Cal.App.3d at p. 437) on the ground that the "plaintiff failed to file a Government Code tort claim describing the facts giving rise to the alleged liability" (*id*. at p. 433). The plaintiff's claim stated he was hurt when a school door closed with force and slammed his

21

head against the door frame due to the door's " 'dangerous and defective condition.' " (*Id.* at p. 434.)  A cause of action in the plaintiff's complaint sought "damages on the theory that school district personnel negligently failed to supervise students who were engaged in 'dangerous horse-play . . . .' " (*Ibid.*)  The Court of Appeal found this cause of action "patently attempt[ed] to premise liability on an entirely different factual basis than what was set forth in the tort claim," creating a variance fatal to the plaintiff's pleading.  (*Id.* at p. 435.)  Even a cursory review of Jansing's claims shows that they possess the same fatal flaw as the plaintiff's claims in *Fall River.*

Jansing's third cause of action was for intentional interference with contract. " 'The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.)  In the operative complaint, Jansing only alleged the existence of one contract, Contract 8459.  Jansing's first government claim focuses on Contract 8459, but in that claim, Jansing only contends that Caltrans wrongfully terminated the contract.  Jansing did not state that any other party interfered with Contract 8459.  Further, in his second claim he does not even mention Contract 8459.  Thus, the factual circumstances set forth in Jansing's written claims do not correspond with the facts alleged in the complaint and Jansing's second cause of action necessarily fails.  (See *Fall River, supra,* 206 Cal.App.3d at pp. 434-435.)

22

In his opening brief, Jansing argues that his third cause of action is really one for intentional interference with prospective economic advantage.[10] He contends that because he was the low bidder on some bids, he had an economic relationship with Caltrans and various Caltrans employees interfered with it. Even if we were to assume that Jansing's claim is one for intentional interference with prospective economic advantage, this claim fares no better than the one he actually pleads in the operative complaint. It simply is not based on the same facts set forth in either of Jansing's government claims, and thus fails. (See *Fall River*, *supra*, 206 Cal.App.3d at p. 434.)

Further, Jansing's claim for intentional interference with prospective economic advantage also fails because Jansing did not allege any of the Individual Defendants' interfering conduct was wrongful by some measure beyond the interference itself. (See *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392-393.) Nor does Jansing claim that he could do so.

Jansing's fourth cause of action is to set aside a contract entered into between Caltrans and Ace Messenger under Public Contract Code section 10421. Like Jansing's

---

[10] The elements of a claim of interference with prospective economic advantage are similar to a claim for intentional interference with contract except that the former does not require the existence of a contract, but instead an economic relationship between the plaintiff and a third party. (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 596.) In addition, a plaintiff stating a claim for interference with prospective economic advantage must allege an additional element. "The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1158-1159.)

third cause of action, there is nothing in either of the government claims that asks for a contract entered into between Caltrans and Ace Messenger to be declared void.[11] Indeed, Public Contract Code section 10421 is not mentioned whatsoever in either of Jansing's two government claims. Further, the relief Jansing seeks in his two government claims is damages ($593,576.80 for the first claim; $783,932.50 for the second claim). Thus, the fourth cause of action fails because nothing in Jansing's government claims alerted Caltrans that Jansing was seeking to set aside a contract.

Moreover, Jansing's claim to set aside a contract under Public Contract Code section 10421 fails for the additional reason that it has not been properly pled. In the operative complaint, Jansing alleges that Caltrans's contract with Ace Messenger is void under Public Contract Code sections 10420 and 10421. But he does not allege why. Public Contract Code section 10420 states "Every contract or other transaction entered in violation of any provision of this chapter is void, unless the violation is technical or nonsubstantive." A plaintiff can seek to void a contract under that section, but there has to be another violation of the Public Contract Code. Likewise, section 10421[12] provides

---

[11] Apparently in a protest, Jansing previously requested that a contract between Ace Messenger and Caltrans be canceled and the bid be awarded to him. However, in his second government claim, Jansing only requested damages.

[12] Public Contract Code section 10421 provides: "The state, or any person acting on behalf of the state, may bring a civil action seeking a determination by the Superior Court that a contract or other transaction has been entered in violation of any provision of this chapter. If the court finds substantial evidence of such a violation, it may issue a temporary injunction to prevent any further dealings upon the contract or other transaction, pending a final determination on the merits of the case. If the action results in a final determination that the contract or other transaction has been entered in violation

24

a mechanism by which a party can bring a civil action seeking a determination that a contract has been entered in violation of some other provision of the Public Contract Code. However, both Public Contract Code sections 10420 and 10421 require a violation of another provision of that code. Here, Jansing has not pointed us to any such allegation in the operative complaint. Nor has he argued he could plead one. As such, this claim fails for this additional reason as well.

The fifth cause of action purports to state a claim against Respondents for violating the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.). Causes of action 6 and 7 attempt to allege claims for violations of the Sherman Antitrust Act (15 U.S.C § 1 et seq.). The Cartwright Act and the Sherman Act were enacted to promote free market competition and to prevent conspiracies or agreements in restraint or monopolization of trade. (*Exxon Corp. v. Superior Court* (1997) 51 Cal.App.4th 1672, 1680.) The allegations contained in both of Jansing's government claims fall woefully short of notifying Caltrans that Jansing believed it had violated state and federal antitrust laws. Jansing's first government claim concerned the alleged wrongful termination of a contract between Jansing and Caltrans. Jansing's second government claim concerned the award of a single contract to Ace Messenger as well as allegations that Caltrans changed the requirements for the bids that prevented Jansing from bidding to be awarded the contract. There is not even a hint in the second government claim that Jansing was subsequently

of this chapter, it shall be void, and the state or person bringing the action shall be awarded costs and attorney[] fees. This section shall not be construed to permit an award of costs and attorney fees to the person or entity contracting or otherwise transacting with the state."

25

going to allege that Caltrans and its employees were engaging in activities to restrain or monopolize trade on the scale required under state and federal antitrust laws and, thus, these causes of action fail. (See *Fall River*, *supra*, 206 Cal.App.3d at p. 434.) The superior court did not err in sustaining the demurrer as to causes of action 5 through 7.[13]

In his eighth cause of action, Jansing alleges Respondents violated RICO. "RICO was intended to prevent the takeover of a legitimate business enterprise by racketeers. RICO requires conduct of an enterprise engaged in or affecting interstate commerce through a pattern of racketeering activity that causes injury to the business or property of plaintiff. [Citation.] In order to allege a civil RICO claim, a party must allege facts sufficient to show a pattern of racketeering activity sufficient to bring the claim within the provisions of [title] 18 United States Code section 1961(1) which defines racketeering as certain specifically enumerated state felonies and violations of specific sections of the United States Criminal Code." (*Globe Internat., Inc. v. Superior Court* (1992) 9 Cal.App.4th 393, 398.)

Much like the shortcomings of Jansing's antitrust claims, his RICO claim also relies on allegations that are far beyond those set forth in Jansing's government claims.

_____

[13] Because we conclude that the allegations in the operative complaint as to causes of action 5 through 7 are not sufficiently based on Jansing's government claims, we do not reach the issue of whether Caltrans can be sued under the Cartwright Act. (See, e.g., *People ex rel. Freitas v. City and County of San Francisco* (1979) 92 Cal.App.3d 913, 921.) As to Jansing's claims under the Sherman Antitrust Act, we note that Congress vested in the federal courts exclusive jurisdiction over federal antitrust laws (15 U.S.C. §§ 1, 2), and state courts have no jurisdiction to construe or enforce the federal antitrust laws (15 U.S.C. § 15; *Union Oil Co. v. Chandler* (1970) 4 Cal.App.3d 716, 726; *Classen v. Weller* (1983) 145 Cal.App.3d 27, 34, fn. 2). Therefore, Jansing's sixth and seventh causes of action could not stand in any event.

There are simply no facts in those claims that put Caltrans on notice that Jansing would bring a RICO claim. Jansing glosses over this deficiency by claiming that his government claims showed a pattern of bid rigging. Not so. Further, Jansing argues his RICO claim is supported by allegations in the operative complaint. This argument misses the point. Simply put, the government claims Jansing submitted here do not provide even an intimation that he believed Caltrans had violated RICO. Jansing's eighth cause of action therefore fails. (See *Fall River*, *supra*, 206 Cal.App.3d at p. 434.)

Following a familiar pattern, Jansing's ninth cause of action for failing to supervise employees under section 815.6 also has no basis in Jansing's government claims. Jansing has not provided any citation to an allegation in his government claim that put Caltrans on notice that he believed it was not properly supervising its employees. This claim therefore fails as well.

IV

*TENTH AND ELEVENTH CAUSES OF ACTION*

Jansing's 10th cause of action is for an accounting. Specifically, he requests an accounting of "the profits of . . . Ace Messenger . . . from its contracts with . . . Caltrans . . . ."

At the outset, we observe there is a split under California law whether accounting is a cause of action or a remedy. (See *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82 [accounting is not an independent cause of action but a remedy]; *Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1413 (*Fleet*) [accounting is a cause of action].) We need not weigh in on this split here.

27

Because Jansing has not alleged any valid causes of action, he is not entitled to an accounting remedy.  (See *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 833-834.)

If we assume accounting is a cause of action then such a claim involves a showing of a relationship between the plaintiff and the defendant, such as a fiduciary relationship, that requires an accounting or a showing that the accounts are so complicated they cannot be determined through an ordinary action at law.  (*Fleet*, *supra*, 229 Cal.App.4th at p. 1413.)  Here, Jansing is not seeking an accounting based on any relationship between him and Caltrans.  Instead, he is asking for an accounting for Ace Messenger based on its contracts with Caltrans.  Jansing has not provided any authority that would allow him such an accounting.  In addition, to the extent accounting is a cause of action, Jansing's claim is not based on either of his government claims and fails for this reason as well.

Jansing's final "cause of action" is for attorney fees under Code of Civil Procedure section 1021.5.  On appeal, Jansing concedes that this is not a cause of action and is a request for an award of attorney fees that is derivative of his other claims.  Because none of Jansing's claims survive, his request for attorney fees under Code of Civil Procedure section 1021.5 necessarily fails as well.

28

DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

29